

# IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI

| Judge or Division: JOHN D WARNER JR | **Case Number: 20SL-CC00926** | |
|---|---|---|
| Plaintiff/Petitioner: A M **vs.** | Plaintiff's/Petitioner's Attorney/Address | |
| Defendant/Respondent: BRIDGECREST ACCEPTANCE | Court Address: ST LOUIS COUNTY COURT BUILDING 105 SOUTH CENTRAL AVENUE CLAYTON, MO 63105 | |
| Nature of Suit: CC Other Tort | | (Date File Stamp) |

## Summons in Civil Case

**The State of Missouri to: BRIDGECREST ACCEPTANCE**

**R/A CSC LAWYERS INC**
**SERVICE COMPANY**
**221 BOLIVAR STREET**
**JEFFERSON CITY, MO 65101**

***COURT SEAL OF***

***ST. LOUIS COUNTY***

**You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.**

**SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act, please notify the Office of the Circuit Clerk at 314-615-8029, FAX 314-615-8739, email at SLCADA@courts.mo.gov, or through Relay Missouri by dialing 711 or 800-735-2966, at least three business days in advance of the court proceeding.**

**05-MAR-2020**
**Date**

**Clerk**

**Further Information:**
**CG**

### Sheriff's or Server's Return

**Note to serving officer:** Summons should be returned to the court within thirty days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with ______________________________ a person of the Defendant's/Respondent's family over the age of 15 years who permanently resides with the Defendant/Respondent.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to

______________________________ (name) ______________________________(title).

☐ other ______________________________.

Served at ______________________________ (address)

in ____________________ (County/City of St. Louis), MO, on ________________ (date) at ____________ (time).

______________________________ Printed Name of Sheriff or Server

______________________________ Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

*(Seal)*

Subscribed and sworn to before me on ______________________ (date).

My commission expires: ________________ Date ______________________ Notary Public

**Sheriff's Fees, if applicable**

| | |
|---|---|
| Summons | $__________ |
| Non Est | $__________ |
| Sheriff's Deputy Salary | |
| Supplemental Surcharge | $ 10.00 |
| Mileage | $__________ (______ miles @ $.______ per mile) |
| **Total** | **$__________** |

A copy of the summons and a copy of the petition must be served on **each** Defendant/Respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.

EXHIBIT A

**THE CIRCUIT COURT OF ST. LOUIS COUNTY, MISSOURI**

Twenty First Judicial Circuit

**NOTICE OF ALTERNATIVE DISPUTE RESOLUTION SERVICES**

**Purpose of Notice**

As a party to a lawsuit in this court, you have the right to have a judge or jury decide your case. However, most lawsuits are settled by the parties before a trial takes place. This is often true even when the parties initially believe that settlement is not possible. A settlement reduces the expense and inconvenience of litigation. It also eliminates any uncertainty about the results of a trial.

Alternative dispute resolution services and procedures are available that may help the parties settle their lawsuit faster and at less cost. Often such services are most effective in reducing costs if used early in the course of a lawsuit. Your attorney can aid you in deciding whether and when such services would be helpful in your case.

**Your Rights and Obligations in Court Are Not Affected By This Notice**

You may decide to use an alternative dispute resolution procedure if the other parties to your case agree to do so. In some circumstances, a judge of this court may refer your case to an alternative dispute resolution procedure described below. These procedures are not a substitute for the services of a lawyer and consultation with a lawyer is recommended. Because you are a party to a lawsuit, you have obligations and deadlines which must be followed whether you use an alternative dispute resolution procedure or not. **IF YOU HAVE BEEN SERVED WITH A PETITION, YOU MUST FILE A RESPONSE ON TIME TO AVOID THE RISK OF DEFAULT JUDGMENT, WHETHER OR NOT YOU CHOOSE TO PURSUE AN ALTERNATIVE DISPUTE RESOLUTION PROCEDURE.**

**Alternative Dispute Resolution Procedures**

There are several procedures designed to help parties settle lawsuits. Most of these procedures involve the services of a neutral third party, often referred to as the "neutral," who is trained in dispute resolution and is not partial to any party. The services are provided by individuals and organizations who may charge a fee for this help. Some of the recognized alternative dispute resolutions procedures are:

**(1) Advisory Arbitration:** A procedure in which a neutral person or persons (typically one person or a panel of three persons) hears both sides and decides the case. The arbitrator's decision is not binding and simply serves to guide the parties in trying to settle their lawsuit. An arbitration is typically less formal than a trial, is usually shorter, and may be conducted in a private setting at a time mutually agreeable to the parties. The parties, by agreement, may select the arbitrator(s) and determine the rules under which the arbitration will be conducted.

**(2) Mediation:** A process in which a neutral third party facilitates communication between the parties to promote settlement. An effective mediator may offer solutions that have not been considered by the parties or their lawyers. A mediator may not impose his or her own judgment on the issues for that of the parties.

CCADM73

**(3) <u>Early Neutral Evaluation ("ENE"):</u>** A process designed to bring the parties to the litigation and their counsel together in the early pretrial period to present case summaries before and receive a non-binding assessment from an experienced neutral evaluator. The objective is to promote early and meaningful communication concerning disputes, enabling parties to plan their cases effectively and assess realistically the relative strengths and weaknesses of their positions. While this confidential environment provides an opportunity to negotiate a resolution, immediate settlement is not the primary purpose of this process.

**<u>(4) Mini-Trial:</u>** A process in which each party and their counsel present their case before a selected representative for each party and a neutral third party, to define the issues and develop a basis for realistic settlement negotiations. The neutral third party may issue an advisory opinion regarding the merits of the case. The advisory opinion is not binding.

**<u>(5) Summary Jury Trial:</u>** A summary jury trial is a non binding, informal settlement process in which jurors hear abbreviated case presentations. A judge or neutral presides over the hearing, but there are no witnesses and the rules of evidence are relaxed. After the "trial", the jurors retire to deliberate and then deliver an advisory verdict. The verdict then becomes the starting point for settlement negotiations among the parties.

**<u>Selecting an Alternative Dispute Resolution Procedure and a Neutral</u>**

If the parties agree to use an alternative dispute resolution procedure, they must decide what type of procedure to use and the identity of the neutral. As a public service, the St. Louis County Circuit Clerk maintains a list of persons who are available to serve as neutrals. The list contains the names of individuals who have met qualifications established by the Missouri Supreme Court and have asked to be on the list. The Circuit Clerk also has Neutral Qualifications Forms on file. These forms have been submitted by the neutrals on the list and provide information on their background and expertise. They also indicate the types of alternative dispute resolution services each neutral provides.

A copy of the list may be obtained by request in person and in writing to: Circuit Clerk, Office of Dispute Resolution Services, 105 South Central Ave., 5th Floor, Clayton, Missouri 63105. The Neutral Qualifications Forms will also be made available for inspection upon request to the Circuit Clerk.

The List and Neutral Qualification Forms are provided only as a convenience to the parties in selecting a neutral. The court cannot advise you on legal matters and can only provide you with the List and Forms. You should ask your lawyer for further information.

CCADM73

RECEIVED
FEB 24 2020
JOAN M. GILMER
CIRCUIT CLERK, ST. LOUIS COUNTY

**IN THE MISSOURI CIRCUIT COURT**
**FOR THE TWENTY-FIRST JUDICIAL CIRCUIT**
**COUNTY OF ST. LOUIS**

**A.M., by and through his mother and next friend, Aparna Deora, Ph.D.,**

**v.**

**BRIDGECREST ACCEPTANCE CORPORATION d/b/a BRIDGECREST,**

**Serve Registered Agent:**
**CSC-Lawyers Incorporating Service Company**
**221 Bolivar Street**
**Jefferson City, MO 65101**

**Defendant.**

**JURY TRIAL DEMANDED**

20SL-CC00926
15

**VERIFIED PETITION**

Plaintiff A.M., by and through his mother and next friend, Aparna Deora, Ph.D., brings this action against Defendant Bridgecrest Acceptance Corporation d/b/a Bridgecrest under the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 (TCPA), and the regulations promulgated thereunder, as a results of an onslaught of robocalls and spam text messages Defendant sent to Plaintiff.

**COUNT I—VIOLATION OF THE TCPA**

**PARTIES, JURISDICTION, AND VENUE**

1. Plaintiff A.M. is a minor residing in St. Louis County, Missouri, and Aparna Deora, Ph.D., is his natural mother.

2. Defendant Bridgecrest Acceptance Corporation is an Arizona corporation registered with the Missouri Secretary of State to transact business in Missouri.

3. Missouri Revised Statutes § 417.20 states "[t]hat every name under which

any person shall do or transact any business in this state, other than the true name of such person, is hereby declared to be a fictitious name, and it shall be unlawful for any person to engage in or transact any business in this state under a fictitious name without first registering same with the secretary of state as herein required."

4. To date, the name "Bridgecrest" has not been registered by Bridgecrest Acceptance Corporation as a fictitious name with the Missouri Secretary of State.

5. Bridgecrest Acceptance Corporation, which was originally named "DT Acceptance Corporation," is a subsidiary of DriveTime Automotive Group, Inc. (DriveTime).

6. DriveTime's website stated, "Founded in 1992, DriveTime is the second largest used vehicle retailer in the United States with a primary focus on the sale and financing of used vehicles and related products." https://www.drivetime.com/company/investors (last visited Nov. 17, 2018).

7. DriveTime's website described DriveTime's relationship with Defendant as follows: "Through Bridgecrest, our sister company, we perform all servicing functions for our loan portfolio, from collections through the resale of repossessed vehicles." *Id.*

8. This Court has personal jurisdiction over Defendant, because it is registered with the Missouri Secretary of State, holds a Motor Vehicle Time Sales license from the Missouri Division of Finance, transacts business in Missouri, made TCPA-violating telephone calls to Plaintiff in Missouri, and committed tortious acts within this state or with consequences in Missouri, including intrusion upon Plaintiff's seclusion, invasion of Plaintiff's privacy, harassing Plaintiff, occupation of Plaintiff's voicemail storage, and using up the battery life of Plaintiff's cellular telephone.

9. Venue is proper under Missouri Revised Statutes § 508.010.4.

10. Plaintiff regularly uses the cellular telephone to which cellular telephone number XXX-XXX-4704 was assigned on August 5, 2017.

11. The voicemail greeting message that Plaintiff recorded, to be played on all incoming calls unanswered by Plaintiff, identified Plaintiff by name.

**SUMMARY OF THE TCPA**

12. The TCPA provides in part:

(b) Restrictions on use of automated telephone equipment

> (1) Prohibitions **It shall be unlawful** for any person within the United States, or any person outside the United States if the recipient is within the United States—
>
> > (A) **to make any call** (other than a call made for emergency purposes or made with the prior express consent of the called party) **using any automatic telephone dialing system or** an artificial **or prerecorded voice**—
> >
> > * * *
> >
> > > (iii) **to any telephone number assigned to a** paging service, **cellular telephone service**, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call, unless such call is made solely to collect a debt owed to or guaranteed by the United States . . . .

47 U.S.C. § 227(b)(1)(A)(iii) (emphasis added).

13. The implementing regulation, titled, "Delivery Restrictions," similarly provides:

(a) **No person or entity may**:

> (1) Except as provided in paragraph (a)(2) of this section, **initiate any telephone call** (other than a call made for emergency purposes or is made with the prior express consent of the called party) **using an automatic telephone dialing system or an artificial or prerecorded voice**;

* * *

> (iii) **To any telephone number assigned to a** paging service, **cellular telephone service**, specialized mobile radio service, or other radio common carrier service, or any service for which the called party is charged for the call.

47 C.F.R. § 64.1200(a)(1)(iii) (emphasis added).

14. The TCPA provides for statutory damages of $500 to $1,500 **per violation** of Section 227(b) of the TCPA and of the implementing regulation, 47 C.F.R. § 64.1200. *See* 47 U.S.C. § 227(b)(3).

15. Specifically, the TCPA's damages provision states,

> (3) **Private right of action** A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State—
>
> (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
>
> (B) an action to recover for actual monetary loss from such a violation, or to receive **$500 in damages for each such violation**, whichever is greater, or
>
> (C) both such actions.

47 U.S.C. § 227(b)(3)(A)-(C) (second emphasis added).

16. If the Court finds that Defendant "willfully or knowingly" violated Section 227(b) "or the regulations prescribed under this subsection," the Court may increase the award amount up to threefold, i.e., $1,500 per violation of the statute and per violation of the regulation. 47 U.S.C. § 227(b)(3); *see Lary v. Trinity Physician Fin. & Ins. Servs.*, 780 F.3d 1101, 1106 (11th Cir. 2015) (holding that district court erred in limiting damages to one violation per call; "the statute allows a person to recover '$500 in damages for each' 'violation of this subsection'"; "Section 227(b)(1) has no language limiting the recovery to $500 per 'call' or 'fax'"); *cf. U.S. Bands & Orchestra Supplies,*

*Inc. v. JT Group, Inc.*, No. 1611-CC00327 (St. Charles County Cir. Ct. Sept. 11, 2016) (awarding $3,000 per fax).

**DEFENDANT'S HARRASSING ROBOCALLS AND TEXT MESSAGES**

17. Plaintiff regularly uses the cellular telephone to which cellular telephone number XXX-XXX-4704 has been assigned.

18. Plaintiff began using that telephone number prior to August 11, 2017.

19. The voicemail greeting message that Plaintiff recorded, to be played on all incoming calls unanswered by Plaintiff, identified Plaintiff by name.

20. Anyone calling Plaintiff and hearing Plaintiff's voicemail message would know that they were calling Plaintiff.

21. Plaintiff never consented to being contacted by Defendant or DriveTime.

22. In 2017 and continuing into January 2018, Defendant used an "automatic telephone dialing system," as defined by 47 U.S.C. § 227(a)(1), to make telephone calls and to send text messages to Plaintiff on Plaintiff's cellular telephone.

23. Plaintiff believes that Defendant used an automatic telephone dialing system for all of the calls and text messages for several reasons: (a) many websites contain complaints about Defendant's robocalls and text messages; (b) Defendant, DriveTime, or DriveTime's affiliates have been sued many times for using an automatic telephone dialing system, in violation of the TCPA, including *Tonya Canady v. Bridgecrest Acceptance Corp.*, No. 2:19-cv-04738-DWL, in the United States District Court for the District of Arizona, Doc. 1 ¶ 9 ("Defendant placed all of these calls using an automatic telephone dialing system, which dialed telephone numbers while no human being was on the line and would have long delays before an agent came on the line."); *Major v Bridgecrest*, No. 4:17-cv-00762 in the United States District Court for the

Southern District of Texas, Doc. 1 ¶ 13 ("When contacting Plaintiff on his cellular telephone, Defendant used an automatic telephone dialing system."); *In re Echols v. Bridgecrest Credit Co.*, No. 1:17-cv-06869, in the United States District Court for the Northern District of Illinois, Doc. 1 ¶ 12 (defendant used, controlled, or operated automatic telephone dialing systems, as defined by TCPA, and automatically called plaintiff on average between 5 to 7 times per day, including from (877) 329-9029), *Hatlelid v. Bridgecrest Acceptance Corp.*, No. 2:17-cv-00153, in the United States District Court for the District of Arizona, Doc. 1 ¶ 9 (defendant's calls were placed using automatic telephone dialing system or by using artificial or prerecorded voice); (c) Plaintiff, like the plaintiff in *Echols*, received calls from (877) 329-9029; and (d) the voicemail messages were sometimes preceded by long pauses.

24. Plaintiff further believes that Defendant used an automatic telephone dialing system, because the website of Plaintiff's parent corporation, DriveTime, advised those who submit a form through the website that DriveTime may use an automatic dialing system or pre-recorded voice message to contact such persons.

25. Specifically, the website stated:

I agree to DriveTime's Privacy Policy and Terms of Use.

By [illegible], you are [illegible] your way to getting approved at DriveTime. You consent to be contacted by DriveTime and its affiliates via telephone, email and texts. Standard rates may apply and you can opt out at any time. We may use an automatic dialing system or pre-recorded voice message to contact you. If you'd prefer not to be contacted by [illegible] dialing system, pre-recorded voice message, or text [illegible], please uncheck this box. ✔

https://www.drivetime.com/getapproved (last visited Nov. 17, 2018).

26. The "affiliates" hyperlink referenced in the previous paragraph, and copied

below, identified Defendant as one of DriveTime's affiliates:

**Affiliates**

DriveTime's Affiliates

Parties of DriveTime include; but are not limited to:

- DriveTime Automotive Group, Inc.
- DriveTime Sales and Finance Company, LLC
- DriveTime Car Sales Company, LLC
- Bridgecrest Acceptance Corporation
- Bridgecrest Credit Company, LLC
- SilverRock Group, Inc.
- SilverRock Automotive, Inc.
- SilverRock Automotive of Florida, Inc.

*This is subject to change at any time.

27. Many of Defendant's telephone calls to Plaintiff were made or initiated to deliver a message with an artificial or prerecorded voice.

28. The messages with the artificial or prerecorded voice stated:

> This is Bridgecrest calling with an important message. Please return our call as soon as possible. The number is 800 968 4261.

29. The messages that were not left with artificial or prerecorded voice generally stated that the message was from Defendant and that it was extremely important.

30. Excluding text messages, Defendant called Plaintiff at least 171 times.

31. Defendant's calls to Plaintiff, excluding text messages, occurred on at least the following dates: August 15, 2017, August 16, 2017, August 17, 2017, August 18, 2017, August 19, 2017, August 21, 2017, August 21, 2017, August 22, 2017, August 23, 2017, August 26, 2017, August 31, 2017, September 1, 2017, September 2, 2017, September 6, 2017, September 6, 2017, September 9, 2017, September 12, 2017, September 13, 2017, September 13, 2017, September 14, 2017, September 14, 2017, September 15, 2017,

September 15, 2017, September 16, 2017, September 18, 2017, September 19, 2017, September 20, 2017, September 20, 2017, September 23, 2017, September 27, 2017, September 28, 2017, September 30, 2017, October 3, 2017, October 3, 2017, October 4, 2017, October 4, 2017, October 4, 2017, October 5, 2017, October 5, 2017, October 6, 2017, October 6, 2017, October 6, 2017, October 7, 2017, October 10, 2017, October 11, 2017, October 11, 2017, October 12, 2017, October 12, 2017, October 13, 2017, October 14, 2017, October 16, 2017, October 16, 2017, October 17, 2017, October 17, 2017, October 18, 2017, October 18, 2017, October 21, 2017, October 24, 2017, October 24, 2017, October 25, 2017, October 25, 2017, October 26, 2017, October 27, 2017, October 27, 2017, October 28, 2017, October 30, 2017, October 30, 2017, October 31, 2017, October 31, 2017, November 1, 2017, November 1, 2017, November 1, 2017, November 2, 2017, November 2, 2017, November 2, 2017, November 3, 2017, November 3, 2017, November 3, 2017, November 4, 2017, November 6, 2017, November 6, 2017, November 7, 2017, November 8, 2017, November 8, 2017, November 8, 2017, November 9, 2017, November 9, 2017, November 9, 2017, November 10, 2017, November 10, 2017, November 10, 2017, November 11, 2017, November 14, 2017, November 14, 2017, November 15, 2017, November 15, 2017, November 15, 2017, November 16, 2017, November 16, 2017, November 16, 2017, November 17, 2017, November 17, 2017, November 17, 2017, November 18, 2017, November 20, 2017, November 20, 2017, November 21, 2017, November 21, 2017, November 21, 2017, November 22, 2017, November 22, 2017, November 24, 2017, November 27, 2017, November 28, 2017, November 29, 2017, November 29, 2017, November 30, 2017, November 30, 2017, December 1, 2017, December 1, 2017, December 1, 2017, December 2, 2017, December 2, 2017, December 4, 2017, December 4, 2017, December 5, 2017, December 5, 2017,

December 6, 2017, December 6, 2017, December 7, 2017, December 7, 2017, December 7, 2017, December 8, 2017, December 8, 2017, December 8, 2017, December 9, 2017, December 9, 2017, December 11, 2017, December 11, 2017, December 12, 2017, December 12, 2017, December 13, 2017, December 13, 2017, December 13, 2017, December 14, 2017, December 14, 2017, December 15, 2017, December 15, 2017, December 15, 2017, December 16, 2017, December 16, 2017, December 18, 2017, December 18, 2017, December 19, 2017, December 19, 2017, December 20, 2017, December 21, 2017, December 21, 2017, December 21, 2017, December 22, 2017, December 22, 2017, December 22, 2017, December 23, 2017, December 26, 2017, December 27, 2017, December 28, 2017, December 29, 2017, December 30, 2017, January 6, 2018, and January 10, 2018.[1]

32. Telephone number 877-329-9029 showed up on Plaintiff's phone for approximately 130 of the calls identified above.

33. Plaintiff is aware of only one call that Plaintiff received from Defendant for which a "voicemail" message that lacked spoken words was left; it was a recording with background sounds, received on December 16, 2017, at approximately 4:54 p.m. CST, and came from 310-683-6204.

34. On August 15, 2017, Defendant's "Hannah" left Plaintiff a voicemail message after hearing Plaintiff's name on the recorded voice greeting.

35. On August 16, 2017, Defendant's "Darian" left Plaintiff a voicemail message after hearing Plaintiff's name on the recorded voice greeting.

36. On August 17, 2017, Defendant's "Hannah" left Plaintiff a voicemail message after hearing Plaintiff's name on the recorded voice greeting.

---

[1] Dates with repeated calls are repeated for each call.

37. On August 18, 2017, Defendant's "Hannah" left Plaintiff a voicemail message after hearing Plaintiff's name on the recorded voice greeting.

38. On September 13, 2017, Defendant's "Hannah" left Plaintiff a voicemail message after hearing Plaintiff's name on the recorded voice greeting.

39. In the event Defendant did not know that it was calling Plaintiff as far back as August 15, 2017, when it robocalled Plaintiff that day, Defendant knew who it was calling after hearing Plaintiff's name and voice that day and after not receiving the requested return call that day or in response to the following voicemail message it left or the one after that or the one after that.

40. Despite repeatedly hearing Plaintiff's voicemail greeting, which identified Plaintiff, Defendant harassed Plaintiff by initiating **at least 171 calls** to Plaintiff.

41. Defendant also sent Plaintiff numerous text messages and, on information and belief, used an automatic telephone dialing system to send text messages to Plaintiff on **the following eight dates**: August 11 and 21, 2017, September 8 and 22, 2017, October 6, 8, and 20, 2017, and November 3, 2017.

42. True and accurate screen shots of those eight text messages follow:



43. Defendant's calls, including the text messages, (a) annoyed, disturbed, and harassed Plaintiff, (b) concerned Plaintiff because many of the communications falsely

indicated there was a relationship between the Parties, (c) intruded upon Plaintiff's solitude and seclusion, (d) invaded Plaintiff's privacy, (e) wasted Plaintiff's time, (f) made Plaintiff's cellular telephone unavailable while ringing, and (g) diminished Plaintiff's cellular telephone battery, thereby damaging Plaintiff in a concrete and particularized way.

44. At least one of the calls caused Plaintiff's cellular telephone to ring while Plaintiff was attending class at school.

45. Defendant's calls and text messages to Plaintiff were placed to a telephone number assigned to a cellular telephone service.

46. Defendant's calls and text messages to Plaintiff were not made for emergency purposes.

47. Defendant's calls and text messages to Plaintiff were not made with the "prior express consent" of Plaintiff or of anyone acting on Plaintiff's behalf.

48. Prior to receiving the above-noted calls and text messages, Plaintiff had never provided Plaintiff's cellular telephone number to Defendant.

49. Defendant's calls and text messages to Plaintiff were not made to collect a debt owed to or guaranteed by the United States.

50. Each of Defendant's calls and text messages to Plaintiff violated 47 U.S.C. § 227(b)(1)(A)(iii), because, on information and belief, they were made using an automatic telephone dialing system.

51. Dozens of Defendant's calls to Plaintiff violated 47 C.F.R. § 64.1200(a)(3), because they were initiated using an automatic telephone dialing system.

52. Dozens of Defendant's calls to Plaintiff, excluding the text messages, violated 47 U.S.C. § 227(b)(1)(A)(iii), were made using an artificial or prerecorded voice.

53. Defendant's calls to Plaintiff, but for text messages, violated 47 C.F.R. § 64.1200(a)(i)(3), because they were initiated using an artificial or prerecorded voice.

54. Defendant willfully or knowingly violated 47 U.S.C. § 227(b) and 47 C.F.R. § 64.1200, because Defendant's calls and text messages were made intentionally to Plaintiff's cellular telephone number and Plaintiff's name was stated on the voicemail greeting that played before Defendant left each of its harassing voicemail messages, yet Defendant kept robocalling, spam-texting, and harassing Plaintiff.

55. Plaintiff's statutory damages sought include the following:

| **Type of Call or Text** | **#** | **Damage Formula, with Statutory or Regulatory Authority** | **Amount** |
|---|---|---|---|
| Autodialed Telephone Call No. 1 on 8/15/17 | 1 | $500 x 2<br><br>47 U.S.C. § 227(b)(1)(A)(iii)<br>47 C.F.R. § 64.1200(a)(i)(3)<br>47 U.S.C. § 227(b)(3)(B) | $1,000 |
| Autodialed Telephone Call Nos. 2-170 | 170 | $1,500 x 2 x 170<br><br>47 U.S.C. § 227(b)(1)(A)(iii)<br>47 C.F.R. § 64.1200(a)(i)(3)<br>47 U.S.C. § 227(b)(3) | $510,000 |
| Artificial or Prerecorded Voice | 41 | $1,500 x 2 x 41<br><br>47 U.S.C. § 227(b)(1)(A)(iii)<br>47 C.F.R. § 64.1200(a)(i)(3)<br>47 U.S.C. § 227(b)(3) | $123,000 |
| Autodialed Text Message No. 1 | 1 | $500 x 2<br><br>47 U.S.C. § 227(b)(1)(A)(iii)<br>47 C.F.R. § 64.1200(a)(i)(3)<br>47 U.S.C. § 227(b)(3)(B) | $1,000 |
| Autodialed Text Message Nos. 2-8 | 7 | $1,500 x 2 x 7<br><br>47 U.S.C. § 227(b)(1)(A)(iii)<br>47 C.F.R. § 64.1200(a)(i)(3)<br>47 U.S.C. § 227(b)(3) | $21,000 |

| **TOTAL** | **$655,000** |
|---|---|

WHEREFORE, Plaintiff seeks judgment in Count I against Defendant for $655,000, plus prejudgment interest at 9 percent per annum commencing January 10, 2018, costs, and any additional relief deemed just and proper.

**COUNT II—CONVERSION**

56. Plaintiff incorporates the allegations of Paragraphs 1-11 and 18-54 above as if set forth in their entireties.

57. Plaintiff was entitled to possess the cellular telephone, its voicemail, its storage capacity, and its battery life.

58. Defendant took possession of the voicemail space on the account for such telephone and took away some of its battery life with the intent to exercise some control over them.

59. Defendant deprived Plaintiff of the right to possession, thereby damaging Plaintiff.

WHEREFORE, Plaintiff seeks judgment in Count II against Defendant for damages, costs, and any additional relief deemed just and proper.

Aparna Deora, Ph.D.
1559 Timberlake Manor Pkwy
Chesterfield, MO 63017
aparnadeora@hotmail.com
(314) 249-8834

**DOCUMENT PRESERVATION DEMAND**

Plaintiff demands that Defendant take affirmative steps to preserve all records, lists, electronic databases, and documents concerning Defendant's calls to Plaintiff or to Plaintiff's cellular telephone number.

STATE OF MISSOURI )
)
COUNTY OF ST. LOUIS )

On this 21st day of February, 2020, before me, the undersigned notary public, personally appeared Aparna Deora, Ph.D., known to me to be the person whose name is subscribed to the within instrument and acknowledged that she executed the same for the purposes therein contained. In witness whereof, I hereunto set my hand and official seal.

Michelle Zmirich

Notary Public

My Commission expires: 9/1/2023

NOTARY PUBLIC NOTARY SEAL STATE OF MISSOURI

MICHELLE ZMIRICH
My Commission Expires
September 1, 2023
St. Charles County
Commission #15432920

OFFICE OF THE CIRCUIT CLERK
CIRCUIT COURT OF ST.LOUIS CO
105 SOUTH CENTRAL AVENUE
CLAYTON, MO 63105
314-615-8035

Invoice No: 285165
Date: 02/24/20

Page: 1

Customer No: 0
Phone No:

APARNA DEORA, PH.D.

Cust. Order #: 20SL-CC00926 Salesperson: #26 - KATIE

| Product Code | Item Description | Qty | Unit Price | Amount |
|---|---|---|---|---|
| 110 | CIVIL & EQUITY FILING | 1 | 105.50 | 105.50 |

| | |
|---|---|
| Sub-Total: | 105.50 |
| : | |
| Shipping: | 0.00 |
| Tax [ 0]: | EXEMPT * |
| Total: | 105.50 |
| CASH : | 110.00 |
| Amount Paid: | 110.00 |
| Amount Due: | 0.00 |
| Change: | 4.50 |

T h a n k
Y o u



# IN THE 21ST JUDICIAL CIRCUIT COURT, ST. LOUIS COUNTY, MISSOURI

| Judge or Division: JOHN D WARNER JR | Case Number: 20SL-CC00926 | |
|---|---|---|
| Plaintiff/Petitioner: A M vs. | Plaintiff's/Petitioner's Attorney/Address | FILED APR 06 2020 JOAN M. GILMER |
| Defendant/Respondent: BRIDGECREST ACCEPTANCE | Court Address: ST LOUIS COUNTY COURT BUILDING 105 SOUTH CENTRAL AVENUE CLAYTON, MO 63105 | RECEIVED (Date File Stamp) |
| Nature of Suit: CC Other Tort | | |

## Summons in Civil Case

MAR 18 2020 COLE COUNTY SHERIFF'S OFFICE

**The State of Missouri to: BRIDGECREST ACCEPTANCE**

**R/A CSC LAWYERS INC**
**SERVICE COMPANY**
**221 BOLIVAR STREET**
**JEFFERSON CITY, MO 65101**

*COURT SEAL OF*

*ST. LOUIS COUNTY*

**You are summoned to appear before this court and to file your pleading to the petition, a copy of which is attached, and to serve a copy of your pleading upon the attorney for Plaintiff/Petitioner at the above address all within 30 days after receiving this summons, exclusive of the day of service. If you fail to file your pleading, judgment by default may be taken against you for the relief demanded in the petition.**

**SPECIAL NEEDS: If you have special needs addressed by the Americans With Disabilities Act, please notify the Office of the Circuit Clerk at 314-615-8029, FAX 314-615-8739, email at SLCADA@courts.mo.gov, or through Relay Missouri by dialing 711 or 800-735-2966, at least three business days in advance of the court proceeding.**

**05-MAR-2020**
**Date**

[signature] **Clerk**

**Further Information:**
**CG**

### Sheriff's or Server's Return

**Note to serving officer:** Summons should be returned to the court within thirty days after the date of issue.

I certify that I have served the above summons by: (check one)

☐ delivering a copy of the summons and a copy of the petition to the Defendant/Respondent.

☐ leaving a copy of the summons and a copy of the petition at the dwelling place or usual abode of the Defendant/Respondent with ______ a person of the Defendant's/Respondent's family over the age of 15 years who permanently resides with the Defendant/Respondent.

☐ (for service on a corporation) delivering a copy of the summons and a copy of the petition to

CSC Lawyers, S.L. (name) designee (title).

☐ other ______.

Served at 350 E. High (address)

in Cole (County/City of St. Louis), MO, on 03-19-2020 (date) at 800 AM (time).

Sheriff John P Wheeler — Printed Name of Sheriff or Server

By [signature] — Signature of Sheriff or Server

**Must be sworn before a notary public if not served by an authorized officer:**

Subscribed and sworn to before me on ______ (date).

*(Seal)*

My commission expires: ______ Date ______ Notary Public

**Sheriff's Fees, if applicable**

| | |
|---|---|
| Summons | $ |
| Non Est | $ |
| Sheriff's Deputy Salary | |
| Supplemental Surcharge | $ 10.00 |
| Mileage | $ ( ____ miles @ $.____ per mile) |
| **Total** | $ |

2608 #30

A copy of the summons and a copy of the petition must be served on **each** Defendant/Respondent. For methods of service on all classes of suits, see Supreme Court Rule 54.