UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| A.M., by and through his mother and<br>next friend, Aparna Deora, Ph.D., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 4:20-cv-00553-SEP |
| | ) | |
| Bridgecrest Acceptance Corporation,<br>d/b/a Bridgecrest, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on Defendant's Motion to Stay (Doc. [24]), which argues

that the Court should stay this case pending resolution by the United States Supreme Court of

*Barr v. American Association of Political Consultants, Inc., et al.*, No. 19-631, and *Facebook,*

*Inc. v. Duguid*, No. 19-511.  The Supreme Court heard arguments in *Barr* on May 6, 2020, and a

petition for writ of certiorari is pending in *Facebook*.  The motion to stay is fully briefed.  Docs.

[25], [27], [28].  For the reasons that follow, Defendant's Motion is granted in part and denied in

part.

Plaintiff brought suit in February 2020 alleging a claim under the Telephone Consumer

Protection Act ("TCPA"), 47 U.S.C. §§ 227, *et seq*.  Doc. [6] ¶¶ 1-55.  He alleges that Defendant

violated TCPA's prohibition on making calls to cellular phones using an automatic telephone

dialing system or prerecorded voice by using such methods to call his cell phone 171 times and

send him several texts between August 15, 2017, and January 10, 2018.  Plaintiff avers that he

has never had any relationship with Defendant and that he has never consented to such

communications.  *Id.* ¶¶ 21, 43, 47.

1

As Judge Limbaugh of this Court recently observed, "[t]he TCPA has been the subject of much appellate discourse lately." *Seefeldt v. Entm't Consulting Int'l, LLC*, No. 4:19-CV-00188-SNLJ, 2020 WL 905844, at *1 (E.D. Mo. Feb. 25, 2020). *Seefeldt*'s account of recent developments in TCPA case law is directly relevant here:

> First, the government-debt exception has been struck down as unconstitutional. *See. Am. Assoc. of Political Consultants, Inc. v. F.C.C.*, 923 F.3d 159 (4th Cir. 2019) (striking down the TCPA's government-debt exception as unconstitutional, but severing it); *Duguid v. Facebook, Inc.*, 926 F.3d 1146 (9th Cir. 2019) (striking down the TCPA's government-debt exception as unconstitutional, but severing it). Both the Fourth and Ninth Circuits found that the government-debt exception rendered the TCPA "fatally underinclusive" in that it "does not further the purpose of the automated call ban in a narrowly tailored fashion." *Am. Assoc. of Political Consultants, Inc.*, 923 F.3d at 168; *Duguid*, 926 F.3d at 1155. Both courts severed the government debt exception while leaving the remainder of the TCPA in place. Their decisions are not without criticism, however, as made clear in the United States' intervening brief. Citing *Brickman v. Facebook, Inc.*, 230 F.Supp.3d 1036, 1047 (N.D. Cal. 2017), the United States argues, apparently on grounds of sovereign immunity, that "[t]he TCPA does not apply to the government"—that is, the TCPA does not impose liability on the government—and thus "the government-debt exception simply acts to protect those who are collecting debts [on its behalf]." As held by the Supreme Court, congress did not waive the government's sovereign immunity in enacting the TCPA, *Campbell-Ewald Co. v. Gomez*, ⸺ U.S. ⸺⸺, 136 S.Ct. 663, 672, 193 L.Ed.2d 571 (2016), and a congressional act is required in order for third parties to enjoy the government's immunity by way of the derivative immunity doctrine. *See Yearsley v. W.A. Ross Const. Co.*, 309 U.S. 18, 20, 60 S.Ct. 413, 84 L.Ed. 554 (1940). Neither the court in *Duguid* nor the court in *Am. Assoc. of Political Consultants* contemplated what effect, if any, this sovereign immunity plays in the underinclusiveness rationale. In any event, the Supreme Court will at least look at these criticisms as raised by the United States in *Barr*. *See* Petition for Writ of Certiorari, Appeal No. 19-631, at pp. 12-13.

*Id*. In sum, among the questions before the Supreme Court in *Barr* are whether the TCPA contains an unconstitutional, content-specific exemption, and if so, whether that provision can be severed or the whole law must be struck down.

2

If the Supreme Court strikes down the TCPA in *Barr*, then *Facebook*, which concerns the

statute's definition of the term "automatic telephone dialing system," as it is used in 47 U.S.C.

§ 227(a)(1), will be moot.  But if the Supreme Court does *not* strike down the TCPA, it may then

grant certiorari in *Facebook*.  As Judge Limbaugh recently explained, appellate courts have split

on the question of the proper definition of "automatic telephone dialing system":

> Second, in the wake of the D.C. Circuit's decision in *ACA Int'l. v. F.C.C.*, 885 F.3d 687, 695 (D.C. Cir. 2018), which essentially reset the TCPA's definitional landscape, appellate courts have been unable to agree on the exact definition to give to an "autodialer" that lies at the heart of the TCPA's prohibitive mandates. This is a preliminary issue to the determination of whatever possible exceptions might remain following constitutional scrutiny. The problem comes down to a proper interpretation of Section 227(a)(1)(A), which states that autodialer "equipment" must have the "capacity" to "***store*** or ***produce*** telephone numbers to be called, ***using a random or sequential number generator***." 47 U.S.C. § 227(a)(1)(A) (emphasis added). The latter phrase is what has caused so much confusion. Does the phrase "using a random or sequential number generator" modify the verb "store" or "produce," or both?  The Third, Seventh, and Eleventh Circuits have all concluded that it is both; an autodialer must be capable of either **storing** telephone numbers using a random or sequential number generator **or produce** such numbers using a random or sequential number generator. *See Gadelhak* v. *AT&T Servs., Inc.*, 950 F.3d 458, 460 (7th Cir. Feb. 19, 2020); *Glasser v. Hilton Grand Vacations Co., LLC.*, 948 F.3d 1301, 1306 (11th Cir. 2020); *Dominguez ex rel. Himself v. Yahoo, Inc.*, 894 F.3d 116, 119 (3d Cir. 2018). They admit, however, that this definition is "imperfect," *Gadelhak*, 950 F.3d 458, 464, and "runs into [interpretive] hurdles." *Glasser*, 948 F.3d at 1306. Conversely, the Ninth Circuit has concluded the phrase affects only the word produce, not store, such that an autodialer can either be equipment with the capacity to store numbers, or with the capacity to produce numbers to be called using a random or sequential number generator. *Marks v. Crunch San Diego, LLC.,* 904 F.3d 1041, 1049 (9th Cir. 2018).

*Seefeldt*, 2020 WL 905844, at *2 (emphasis in original).  In *Facebook*, the petitioners are asking

the Court to resolve this circuit split by defining the term "automatic telephone dialing system,"

as it is used in 47 U.S.C. § 227(a)(1).  *See* Petition for Writ of Certiorari at 23-24, *Facebook Inc.*

*v. Duguid*, No. 19-511 (Oct. 17, 2019).

Returning to the case at bar:  Defendant argues that because the Supreme Court is poised

to provide resolutions to these two TCPA-related questions that have roiled the appellate courts,

the Court should stay this case pending those resolutions.  That argument has merit.  It is true

that the Supreme Court's decision in *Barr* could undermine Plaintiff's central claim, and if it

does not, Plaintiff's case could be substantially affected by the Supreme Court's holding in

*Facebook*.  Plaintiff alleges that he received 130 calls that did *not* use artificial or pre-recorded

voices.  Therefore, whether his TCPA claim as to those calls is cognizable depends on the

definition of an "automatic telephone dialing system."  Doc. [28] at 1-2.  Defendant argues that a

stay will promote judicial economy and preserve the parties' resources conducting discovery that

may be rendered unnecessary by Supreme Court decisions.  Doc. [25] at 2.  It points out that

Plaintiff waited over two years between the last allegedly offending call before filing suit,

suggesting that "there is no basis to suggest that Plaintiff will suffer any ongoing injury if this

case is stayed pending the Supreme Court's review of the TCPA."  *Id*. at 5.

Plaintiff does not object to a stay pending a decision in *Barr*.  Doc. [27] at 1-2.  Rather,

he objects to a stay pending resolution of *Facebook*, where "certiorari has not been granted,

much less has the matter been briefed and argued."  *Id*. at 2.  Plaintiff also points out that 41 of

the 171 calls Plaintiff received from Defendant allegedly used an artificial or pre-recorded voice,

which is separately prohibited by the TCPA; therefore (assuming the Supreme Court does not

strike down the TCPA in *Barr*) Plaintiff's TCPA claim will survive regardless of the fate of the

*Facebook* litigation.  *Id*.  Further, Plaintiff has raised a claim for conversion that does not depend

on the TCPA.  *Id*. at 2-3.

This Court has inherent power to stay proceedings as part of its authority "to control the

disposition of the causes on its docket with economy of time and effort [in mind] for itself, for

4

counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).  "How this can best

be done calls for the exercise of judgment, which must weigh competing interests and maintain

an even balance." *Id*. at 254-255.  Generally speaking, the Court is to weigh "the potential

prejudice or hardship to the parties, as well as the interest of judicial economy."  *St. Louis Heart*

*Ctr., Inc. v. Athenahealth, Inc.*, 4:15-CV-01215-AGF, 2015 WL 6777873 at *5 (E.D. Mo. Nov.

4, 2015).  The Court agrees with the parties that a brief stay pending the Supreme Court's

imminent resolution of *Barr* is in the interest of the parties and judicial economy, and that it will

cause no hardship or prejudice to any party.  *See Seefeldt*, 2020 WL 905844, at *3-4.

      *Facebook* is a different matter.  When a petition for writ of certiorari is pending, a

proponent of a stay must persuade the Court that (1) there is "a balance of hardships in their

favor" **and** (2) four Justices "would likely vote to grant a writ of certiorari."  *Missouri State*

*Conference of Nat'l Ass'n for Advancement of Colored People v. Ferguson-Florissant Sch. Dist.*,

No. 4:14-CV-2077-RWS, 2018 WL 4932537, at *1 (E.D. Mo. Oct. 11, 2018) (citing *New York*

*Times Co. v. Jascalevich*, 439 U.S. 1304, 1304 (1978)).  The party requesting a stay—here,

Defendant—bears the burden of establishing the propriety of a stay.  *Nken v. Holder*, 556 U.S.

418, 433-34 (2009).  Defendant focuses its argument on the balance of hardships and fails to

provide any argument that four Justices "would likely vote to grant a writ of certiorari" in

*Facebook*.  Indeed, Defendant acknowledges that the Supreme Court may not grant certiorari

because it may strike down the TCPA in *Barr*.  Thus, Defendant has not met its burden for the

issuance of a stay pending resolution of *Facebook*.

      The Court is mindful that *were* the Supreme Court to grant certiorari in *Facebook*, there

might be good reason to stay this case pending resolution of that one.  But that is not the situation

at this time.  The Court will entertain another motion for a stay if that event should come to pass.

For the foregoing reasons,

**IT IS HEREBY ORDERED** that Defendant's Motion for Stay (Doc. [24]) is

**GRANTED in part** and **DENIED in part.**  This matter is hereby stayed pending the Supreme

Court's decision in *Barr v. American Association of Political Consultants, Inc.*, No. 19-631.

Dated this 26th day of June, 2020.

_____

SARAH E. PITLYK
UNITED STATES DISTRICT JUDGE